### READ & EMERY v. LADD.

Where A sells goods to B at the request of C, and on the promise of the latter to be responsible for the price, the promise is void unless in writing, if there is any liability from B to A.

The liability of B is conclusive that the promise is collateral and not original.

ASSUMPSIT tried before KENT, Circuit Judge, February 17, 1845.

The plaintiffs declared on a special promise of defendant to be accountable for all the goods sold on credit by plaintiffs to Crane & Stone, of Tallahasse, Florida, which they might require in their business; with counts for merchandise, and money counts. Pleas — general issue, payment and set-off.

The plaintiffs proved by their clerk that in September, 1839, the defendant, who resided in Florida, introduced Crane to the plaintiffs, who are merchants in New York, saying he had brought on a draft with the expectation of buying goods for cash, but the draft had not been paid; that Emery, one of the plaintiffs, told defendant they would not trust a stranger fifty cents without a guaranty, and that Crane & Stone were strangers to the plaintiffs; and defendant hesitated upon being asked if he would be responsible. Some four or five days afterward, defendant again came to plaintiffs' store, and said he did not like to see the man go back without the goods, and if plaintiffs would sell him, he, defendant, would see them paid. Soon after he returned and introduced Crane, and

helped select the goods. At the time of the agreement the proposition defendant made was that plaintiffs were to sell the goods on his responsibility, take Crane & Stone's notes at four and six months, mark them with defendant's name; take a bill of lading and enclose the notes in a letter of instructions to defendant. This arrangement was made at defendant's request, as he wished Crane & Stone to be ignorant of his responsibility, so that if the notes were dishonored he might sue for payment. In the fall of 1840 defendant told the firm he had amply secured the debt, and that they need take no further trouble, he would see the whole debt paid.

A witness for the plaintiff further stated that the goods were entered in plaintiffs' books as sold to Crane & Stone (D. Ladd security), and were not directly debited to defendant; that they were sold, however, on defendant's responsibility, and he was called upon to pay the bill in 1840.

For the defense, a letter from plaintiffs to defendant, 9th October, 1839, was given in evidence as follows: "Herewith you receive bill of lading of Crane & Stone's bill consigned to you, and also, etc. . . . . Now, Mr. Ladd, the bill is large, and we must request you to be very particular about the security. We do not expect or wish you to be at all this trouble for nothing, but if you have to go to St. Marks to attend to it, or to Tallahasse to get the security, spare no expense to do it right, and charge time and trouble to us." And enclosing bill headed thus: "Messrs. Crane & Stone (through Daniel Ladd) bought of Read & Emery."

On the 19th of the same month they wrote that they had sent "the bill of lading of Crane & Stone's goods, also their notes for you to get the proper security. You will excuse our again requesting you to be very particular about the security, and we will amply satisfy you for trouble." They again wrote, January 2, 1840: "Crane & Stone's first note will be due 3d of February. We hope they will meet it at maturity there, or forward something in season to meet it here." And on February 8, 1840: "We have not heard from Crane & Stone. One of their notes is past due. We hope it has been met.

Any trouble you may have we will amply repay you for."
Also on May 4, 1840: "We are happy to find you have
secured Crane's affair. You must invest the proceeds for us,
according to your own judgment, and for your time and
trouble you shall be amply repaid, and will endeavor to recip-
rocate the favor." Also on the 25th: "You have not men-
tioned Crane's affair for some time. We hope it is squared
before this. We fear it has been troublesome, but we will
cheerfully reciprocate the favor and pay for time and trouble.
If there is a balance still due please have it settled before you
leave."

The jury returned a verdict for plaintiffs.

*Benedict*, for defendant, now moved for a new trial on the
ground that defendant's undertaking was collateral and
within the statute of frauds, and that the verdict was against
law.

*Thos. C. Pinckney*, *contra*, contended that it did not come
within the statute (Kent's Com. vol. 3, p. 122, and cases there
cited; *Chase* v. *Day*, 17 Johns. R. 114; *Graham* v. *O'Neil*,
2 Hall's Superior Court R. 474; *Wheelwright* v. *Moore*, 1 id.
648; *De Wolfe* v. *Raband*, 1 Peter's R. 476), and that to
whom the credit was given was a question of fact for the jury,
to be collected from the whole transaction (2 Saund. Pl. and
Ev. 456; 1 H. Black. 120; 5 Taunt. 450), and they having
found for plaintiff, the verdict ought not to be disturbed.

*The Circuit Judge:* The verdict was clearly against law,
for unless the defendant's undertaking was original, and not
collateral to the obligation of the principal debtors, it was void
under the statute of frauds because it was not in writing.

The most favorable light in which the testimony could place
the case for the plaintiffs was, that the promise of the defend-
ant was made at the same time, and became an essential ground
of the credit given to the principal debtor. But such a prom-
ise has been repeatedly held to be within the statute of frauds.

(*Leonard* v. *Vredenburgh*, 8 J. R. 39 ; *Larson* v. *Wyman*, 14 Wend. 246.)

The true test is, whether there is any liability of the vendee to the vendor, for if there is, then the promise of the guarantor is collateral, and must be in writing. In this case it is evident from all the testimony that the defendant was regarded by both parties, at most, only as security for the payment of the debt by Crane & Stone. The sale was entered on plaintiff's books as "sold Crane & Stone, D. Ladd security," and the bill was made out "Messrs. Crane & Stone (through Daniel Ladd), bought of Read & Emery."

In their letters the plaintiffs urge the defendant to get security from Crane & Stone, and to collect their debt, and they offer to pay him for his time and trouble. In the words of the learned judge who tried the cause, "in all their letters they held to him the language of his acting in their behalf, as their agent, giving him instructions to spare no pains, time or expense to secure and collect the claim, and they would reward him for so doing."

This is entirely inconsistent with the only idea upon which the finding of the jury can be justified, that of regarding the defendant as the principal debtor, to whom the goods were sold, and from whom the plaintiffs expected payment in the first instance.

New trial granted, costs to abide the event.